

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAEED KAID,                          :
                                     :
        Plaintiff,                   :
                                     :
    v.                               :  Civil Action No: _____
                                     :
E. L. Tatum, Jr., Warden, et al,:
Named & Unknown Defendants,          :
Twenty-Eight Total Defendants,       :        **COMPLAINT**
                                     :
        Defendant(s).                :

## I. JURISDICTION AND VENUE

1.    This is a Civil Action authorized by 28 U.S.C. §§ 1331 and 1343(a)(3) to redress the deprivation, under color of federal law, of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).   Plaintiff Kaid seeks relief monetarily to include compensatory and punitive damages, under the applicable statutes and laws.

2.    The Southern District of New York is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFFS

3.    Plaintiff Kaid, is and was at times mentioned herein a prisoner of the Federal Bureau of Prisons, to include federal detention center(s) in the custody of federal authorities.   He is

1

currently confined in the Federal Correctional Center, i.e. "F.C.I. Fairton" in Fairton, New Jersey.

### III. DEFENDANTS

4.   Defendant(s)

A. Each defendant is sued individually and in their official capacity.  At all times mentioned herein this complaint each defendant acted under the color of federal law.

B. E. L. Tatum, Jr., Warden, is the Warden of the Department of Justice's, Federal Bureau of Prisons, New York MCC. He is legally responsible for the overall operation of the New York MCC and for the welfare of all inmates housed in that facility.

C. K. Alraheed, Associate Warden of Programs, New York MCC, is responsible for the overall programming at the New York MCC, and supervises staff and inmates involved in programming at said facility.

D. Jane Doe, Associate Warden of Operations.  She is responsible for the overall operational aspects of the New York MCC and supervises staff and inmates from that perspective at the New York MCC.

E. John Doe, Captain, at the New York MCC.

### IV. FACTS

1.   This complaint stems from a series of events that originated

when correctional authorities at the named facilities, i.e. Metropolitan Correctional Center, ("MCC") hereinafter called "MCC", neglected their constitutional duties to protect Plaintiff from physical harm, covered-up their failure to protect, and then denied Plaintiff swift and adequate medical treatment; and denied the Plaintiff due process while attempting to resolve his issues through the Administrative Remedy Program, hereinafter called ("ARP"), thereby making their acts individually and collectively contrary to the United States Constitution, as well as the Policies and Program Statements of the Federal Bureau of Prison ("FBOP").

Preliminary Facts:

2.    On or about January 9, 2017, at 4:00 am, the United States Marshal's Service, ("USMS") picked Plaintiff up from a New York State run correctional facility, Department of Corrections, ("NYDOC"), on a Writ, and thus transported Plaintiff to the custody of the "FBOP", "MCC" on Park Row, New York, 10007.

3.    At approximately 6:00 pm, the "USMS" escorted Plaintiff to the MCC New York and "FBOP" official J. Mobley booked Plaintiff as a new admission at the "MCC".

4.    During the Booking Process within "MCC"'s Receiving and Discharge Unit, (R&D), the Unit Team staff there, instead of following FBOP policy of "placing Plaintiff in Administrative Detention status pending classification as a new commitment; he (Plaintiff) was merely taken through a symbolic or ritualistic intake screening, vitals were taken by Health Services staff and was then given a housing assignment, a Unit Team; who were by

3

policy, responsible for screening for possible "separatees or other security threats" before being assigned as a new commitment/newly arrived inmate.

5.  The R&D Unit Team staff and his Unit Team staff failed to perform their basic duties to prevent serious harm and recklessly disregarded the risk of that foreseeable harm, caused by Plaintiff being improperly assigned to United 11 North, (a General Population unit) with a cooperating witness ("a separatee") in his case for the government.

6.  On January 9, 2017, at approximately 7:00 pm, shortly after his arrival, Plaintiff was approached by his cellmate and other inmates "to read his indictment",[1] and he was informed that "R.J." was cooperating against Plaintiff's codefendant ("L.J."), and was told to "be careful" because it was known that (R.J.) had a big knife.  "Upon hearing this, Plaintiff immediately sought and asked Duty Officer Anderson to separate him because Plaintiff felt that his life was in immediate danger."  The Duty Officer (Anderson) asked, "You just got here and you trying to leave?" "Look, it's close to recall-count time.  Notify your Unit Team when they arrive, they can deal with that mess."

7.  On January 10, 2017, the following morning, at approximately 6:45 am, during breakfast feeding, R.J. insisted that Plaintiff accompany him up the steps by the Counselor's Office.  Upon reaching the top stairs R.J. yelled, "My safety is everything." as he attacked Plaintiff without any provocation.  R.J. stabbed Plaintiff in his mid-lower back.  During this attack, R.J. over-powered Plaintiff and shoved him down the steps, causing

4

severe injuries to his left foot and ankle. R.J. managed to kick Plaintiff in the head and stomped on his already injured foot, causing further damage to his left foot.

8.    As R.J. beat Plaintiff, he yelled for help and summoned prison officials by smacking his hand on the ground. Duty Officer (Anderson) finally arrived and yelled, "stop," but refused to use pepper-spray (mace) on R.J. who continued to attack Plaintiff. Duty Officer (Anderson) then pulled her body alarm, but, the back-up who responded to quell said attack were stuck on the 11th floor's sally-port and failed to gain entry into the Unit (11 North) to protect Plaintiff due to the Control Manager's (Lt. Anderson) failure to buzz open Unit 11 North's entrance door.

9.    Two (2) other inmates then intervened, due to the delay with back-up, as well as Plaintiff's apparent unstable condition, as a result, R.J. and these two inmates began to fight.  Then Duty Officer Anderson made a request over her radio for additional back-up assistance to quell the assault.  The back-up arrived using the staired exit, due to Unit 11 North's door being locked. We (inmates) were separated and escorted to the Medical Department.

10.    Immediately following the assault, the Plaintiff was taken to the emergency room at the MCC.  Plaintiff was suffering from migraine type headaches (from being kicked in the head), dizziness and a stab wound in his mid-lower back, and painful swelling of his entire left foot and ankle.

11.    Plaintiff was immediately questioned by R.N. T. Thomas, and S.I.S. Lieutenant T. Doctor, regarding what had transpired, and

5

the Plaintiff stated that "he was attacked and had a fight that led to his injuries." That "he was stabbed and feels a cut on his back, and that his foot and ankle pain was due to being pushed down the stairs, causing great pain."

12. R.N. Thomas explained to Plaintiff that he had a 1 centimeter open cut on his mid-lower back that was going to require cleaning and bandage. In addition Plaintiff was x-rayed to determine whether or not his foot/ankle was broken. The results rendered that Plaintiff sustained fractures in his left foot and ankle joint effusion.

13. Immediately after x-rays, despite the excruciating pain Plaintiff was suffering, he was only provided an ankle brace and then rushed to a detention cell in the Special Housing Unit ("SHU") instead of being transported to a local hospital for emergency medical care, since his injuries did require immediate medical attention. This resulted in "medical negligence" at the least.

14. Despite the noticeable (via x-rays) severity of Plaintiff's injuries and the extreme pain he was suffering as a result of his injuries, only his inhaler and 30 naproxens (prescribed from a previous injury) (See MEDICAL SHEET dated _1/10/2017_ ), were given to Plaintiff after the current attack.

15. Plaintiff continued to suffer severe pain throughout the following day from his extensive injuries, and although his present pain was not alleviated, no stronger pain medicine was administered.

16. On January 11, 2017, the following day, Plaintiff continued

6

to suffer a general, mental, physical and emotional degree of pain and agony, as a result of his untreated injuries. P.A. C. S. Mandeep was verbally notified by Plaintiff, from his bed in his cell in the SHU, during rounds, that he was still experiencing severe pain and that a stronger pain medication was needed. P.A. C. S. Mandeep said, "I'll notify Doctor Bussanich."

17. On or around January 13, 2017, during SHU rounds, Plaintiff gave R.N. T. Thomas a sick call request slip concerning his pain and medical needs to no avail.

18. Unfortunately, after several days of not hearing from the Health Service Administrator (HSA) S. Gregory, Dr. Bussanich, P.A. C. S. Mandeep, nor R.N. T. Thomas, concerning the numerous sick-call request slips Plaintiff had submitted regarding this medical emergency, Plaintiff turned to the SHU Lieutenant (John Doe) "who supervises the SHU" for assistance by informing him during his rounds that Plaintiff was undergoing extreme pain as well as problems he was having when trying to ambulate to and from the showers, handcuffed, without support and that crutches were needed." The SHU Lieutenant stated, "You're just going to have to figure it out." A deliberate indifference attitude to my plight, he said, "all of this is above my pay-grade."

19. On or around January 19, 2017, during rounds in the SHU, Plaintiff gave a sick-call request slip to P.A. C. S. Mandeep concerning his continuous pain, overall harsh conditions and discomfort. P.A. C. S. Mandeep stated to Plaintiff, "I did my part, but, I'll personally give Dr. Bussanich your slip."

20. Despite the injuries sustained as a result of this attack

7

the (HSA) Gregory; Dr. A. Bussanich; P.A. C. S. Mandeep, nor R.N. T. Thomas ever administered stronger pain medicine or crutches following this severe foot injury, compelling Plaintiff to painfully use his fractured left foot or hop around on a right leg that sustained a broken femur bone (years prior) to ambulate after the attack, making his urgent care void, and go through daily activities unnecessarily more painful and difficult.

21. The SHU Lieutenant (John Doe)'s total disregard as well as the delay in care by all medical staff involved, left Plaintiff vulnerable in this prison environment, as he painfully struggled to obtain food trays, use the restroom, to take showers, go to the Law Library, to go to and from Court, to sleep, ect.

22. On or around January 23, 2017, during SHU rounds, Plaintiff gave yet another sick-call request slip to R.N. T. Thomas simply asking, "Why am I being denied needed medical care?" R.N. Thomas stated, "All I can do is give them your slip, but, I can't make any promises after that." And nothing changed as he (Plaintiff) continued to suffer from the migraine headaches, emotional distress, and physical pain throughout the days and nights, lack of sleep, ect., for days afterwards, Plaintiff was left to deal with this medical emergency on his own in a cold detention cell.

23. On February 3, 2017, twenty-five (25) days after Plaintiff sustained this significant injury, he obtained medical care in the form of a hard cast over his left foot and ankle, an ice pack, crutches, and the 'outside' doctor recommended Tramadol "pain medicine" for his pain when he was taken to a local hospital in Brooklyn, New York (Plaintiff never received

8

recommended medication).

24. Sometime in late January (the 19th), in Unit 9 South, after E. Walkes and R. Proto read over Plaintiff's informal complaint that was written on writing paper explaining the wrongs, E. Walkes angrily looked into Plaintiff's cell and said, "Are you fucking crazy? As long as you're in this building, your life will be a living hell." R. Proto then added, "If you pursue this any further, we will have criminal charges brought against you for assaulting a cooperator and obstruction of justice." She then said, "Do you understand?" Plaintiff agreed, not knowing at the time that they could not do that by law.

25. On or around January 21, 2017, in Unit 9 South, during a supper feeding, SHU Officer (John Doe) served Plaintiff a tray wherein the rice was unusually watery. Plaintiff asked for a different tray and the officer said, 'What you need to worry about is pissing off my man E. Walkes." Plaintiff found this very intimidating and threatening in nature and perceived it as a form of retaliation.

Exhaustion of Administrative Remedies, Plaintiff Saeed Kaid, throughout this ordeal has used the Administrative Remedy Procedures ("ARP") of the FBOP and the Defendants have retaliated by placing Plaintiff in the Special Housing Unit ("SHU") as they attempted to cover-up their unconstitutional violations, as a means to circumvent his attempts to file Administrative Remedies and they continued to keep records and documents away from Plaintiff as he has been consistent in trying to address these serious violations and disregard for his constitutional rights to

9

medical care, protection from assaults and harassment by Defendants.

The Second Circuit has recognized that "systematic deficiencies in staffing, facilities, or procedures [which] make unnecessary suffering inevitable" constitute deliberate indifference to Plaintiff's medical needs. Torado v. Ward, 565 F.2d 48, 52 (2nd Cir. 1977). Persons untrained or inadequately trained, such as the Defendants in this claim states a deliberate indifference claim. Kelly v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990); Mitchell v. Aliusi, 872 F.2d 577, 581 (4th Cir. 1989); Boswell v. Sherburne County, 849 F.2d 1117, 1123 (10th Cir. 1988), cert. denied, 488 U.S. 1010 (1989).

## V. LEGAL CLAIMS

MEDICAL NEEDS:

The Supreme Court has listed as basic human needs, food, clothing, shelter, medical care and reasonable safety. The fact that Plaintiff was attacked by a person whom was cooperating with the government in his case was serious enough to rise to an Eighth Amendment violation and is serous enough to amount to the wanton and unnecessary infliction of pain. Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327 (1991).

Unsafe conditions at the MCC where Plaintiff was attacked, posed an unreasonable risk of serious danger to Plaintiff's immediate and future health. Thus violating the Eighth Amendment. Helling v. McKinney, -- U.S. --, 113 S.Ct. 2475, 2481

10

(1993) ("a remedy for unsafe conditions need not await a tragic event").

The Subjective Component. Deliberate Indifference: In Eight Amendment conditions cases such as this one, Plaintiff shows and proves that Defendants acted with 'deliberate indifference' in that Plaintiff's claims fall somewhere between mere negligence (carelessness) and actual malice (the intent to cause harm). Farmer v. Brennan, 114 S.Ct. at 1978; Wilson v. Seiter, 111 S.Ct. at 2326. The Supreme Court held in Farmer v. Brennan that in an Eighth Amendment case, a prison official can be found reckless or deliberately indifferent if "the official knows of and disregards an excessive risk to inmate health or safety..." Id. at 1979.

This is the same standard of recklessness or deliberate indifference that is used in criminal law, sometimes called the 'subjective approach' to recklessness. Id. at 1980-81. The other standard called 'objective recklessness' standard, permits defendants to be held liable based on what they should have known or what was obvious. Farmer holds that prison officials must do what is reasonable, not what is easy. 114 S.Ct. at 1983-84.

The Supreme Court has described deliberate indifference as a state of mind, Wilson v. Seiter, 501 U.S. at 303, 111 S.Ct. at 2326.

Plaintiff avers that deliberate indifference can be "inferred" from the facts as presented since Defendants failed to respond reasonably to a known risk.

Since Plaintiff is unable to obtain his own medical services, the Constitution requires prison authorities to provide

11

them with "reasonably adequate" medical care.  Newman v. Alabama, 559 F.2d 283, 291 (5th Cir.), cert. denied, 438 U.S. 915 (1978); See also Langley v. Coughlin, 888 F.2d 252, 254 (2nd Cir. 1989) (officials must provide "reasonably adequate necessary medical care in which would be available to [the prisoner] if not incarcerated.").

Plaintiff avers that the Court has defined "adequate medical services" as "services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." Fernandez v. United States, 941 F.2d 1488, 1493 (11th Cir. 1991); United States v. DeCologzro, 821 F.2d 39, 43 (1st Cir. 1987) and as "a level of health services reasonably designed to meet routine and emergency medical, dental and psychological or psychiatric care." Tillery v. Owens, 719 F.Supp. at 1301.

Defendants' "deliberate indifference" to Plaintiff's serious medical needs constituted the "unnecessary and wanton infliction of pain...proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 97 S.Ct. 285 (1976).

Defendants' delay and/or denial of adequate medical care depended upon the seriousness and urgency of the medical need. See e.g. Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1178, 1183 (7th Cir. 1985). The Court held that "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." Brown v. Hughes, 894 F.2d 1533.

Defendant's systematically, collectively and individually, interfered with the treatment once it was prescribed by an

12

outside hospital doctor. Estelle v. Gamble, 429 U.S. at 105. Defendants' actions were "so grossly incompetent, inadequate, and excessive, as to shock the conscience," and was so inappropriate as to evidence intentional maltreatment." There by violating Plaintiff's Eighth Amendment protection. Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986) (emphasis supplied); accord, Howell v. Evans, 922 F.2d 712, 719.

Plaintiff, on several occasions communicated his serious medical concerns through nurses, P.A.'s, and other assitants who were assigned to handle and prioritize Plaintiff's request for treatment. Partee v. Lane, 528 F.Supp. 1254, 1259-61 (N.D. Ill. 1981) Burks v. Tisdale, 492 F.Supp. 650, 678-79 (W.D. Mo. 1980); See Toussaint v. McCarthy, 801 F.2d 1080, 1111-12 (9th Cir. 1986) (court should determine what services were performed by assistants, nurses and inmates and whether they were qualified to perform them), cert. denied, 481 U.S. 1069 (1987).

PLAINTIFF'S PERSONAL SAFETY:

The Constitution requires prison officials to provide "reasonable safety" for prisoners. Helling v. McKinney, -- U.S. --, 113 S.Ct. 2475, 2480 (1993), quoting Deshaney v. Winnebago, County Dept. of Social Services, 489 U.S. 189, 200, 190 S.Ct. 998 (1989); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985).

Defendants failed to protect Plaintiff from assault by another inmate. Defendants failed to take reasonable measures to protect Plaintiff and did not utilize their own Central Inmate Monitoring ("CIM") policies to assure that Plaintiff would be

13

separated from his attacker. The Defendants should not have even had Plaintiff housed in same quarters as his assailant. Defendants admitted the fact that that was an error. Unfortunately, Plaintiff was stabbed and suffered other injuries as a result. See Farmer v. Brennan, 114 S.Ct. at 1984.

Defendants' failure to properly classify Plaintiff states deliberate indifference. Butler v. Dowd, 979 F.2d 661, 675 (8th Cir. 1992) (en banc) (random housing assignments of vulnerable prisoners and obstacles to admissions to protective custody); Created a substantial or pervasive, a "constant threat" of violence, and "a risk of harm," as was the case here. Matzker v. Herr, 748 F.2d at 1149; accord, Withers v. Levine, 615 F.2d at 161.

## VI. LEGAL CLAIMS FOR RELIEF

Plaintiff, Saeed Kaid, re-alleges and does incorporate by reference paragraphs 1 - the following:

The Defendants' violated the Constitutional, Civil, and human rights by being deliberately indifferent to medical needs, unsafe conditions, conspiracy to cover up misconducts while thereby violating Saeed Kaid's Fourth and Eighth Amendment, to include cruel and unusual punishment, due process violations, retaliatory punishment for utilizing his administrative remedy process as best he could, even though Defendants were aware that they were violating his Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

14

The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.

Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless the court grants the relief which the Plaintiff seeks.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully request that this Court grant or enter judgement as follows:

A.   A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States of America.

B.   Compensatory damages in the amount of $ 1,500,000.00 against each Defendant, jointly and severally.

C.   Punitive damages in the amount of $ 1,500,000.00 against each Defendant.

D.   A jury trial on all issues triable by jury.

E.   Plaintiff's cost in this suit.

F.   Any additional relief this court deems just, proper and equitable.

Respectfully submitted,

*Saeed Kaid*

Saeed Kaid
Reg. No. 78600-054
F.C.I. Fairton
P.O. Box 420
Fairton, NJ   08320

Submitted this   5th   day of   February   , 2020.

CONCLUSION

Defendants individually and collectively sought to delay, interfere with, discourage through intimidation and retaliation, to hinder Plaintiff from pursuing his claims administratively, by denying Plaintiff documents supporting his claims; And, by placing him in Administrative Segregation in "Special Housing Unit" ("SHU") as a means of retaliation and punishment.

Plaintiff, as a result of the Defendants actions, was subjected to cruel and unusual punishment; psychological harm; attacked by another inmate; and then, denied adequate and sufficient medical treatment, all in violation of the Constitution of the United States of America, i.e. Eighth, Fifth and Fourteenth Amendments.

Plaintiff was denied due process, through the deliberate indifference of Defendants to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Defendants were callous in their disregard for Plaintiff's constitutional protections.

Plaintiff alleges that his injuries proximately resulted from Defendants' conduct, and Plaintiff believes he should be compensated for his pain, suffering and mental anguish already suffered.

Plaintiff believes he is entitled to compensatory and punitive damages since Defendants acted intentionally and purposely to deprive Plaintiff of his rights.

Plaintiff avers that Defendants acted in reckless disregard of or with callous indifference to his rights; or Defendants

16

carried out lawful activities with unnecessary harshness, abuse of their official power, and took unfair advantage of Plaintiff.

Plaintiff prays for relief in the amount of $ 1,500.000.00 in compensatory and punitive damages and any other relief the Court thinks is warranted or appropriate.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged on information and belief, and, to those, I believe them to be true.  I certify under penalty of perjury that the foregoing is true and correct.

Executed at F.C.I. Fairton, New Jersey, on the 6th day of Feburary , 2020.

*Saeed Kaid*          *Saeed Kaid*
Saeed, Kaid, Plaintiff

Attachment(s)
Medical Records
Admin. Rem. Paperwork

DOROTHY R. BELL
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2373875
My Commission Expires 5/30/2023
02/06/2020
*D Bell*
Acknowledgment of Signature

Sworn to and subscribed
before me this
06 day of Feburary 2020

17

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

SAEED KAID,                                        :
                                                   :
     Plaintiff,                                    :
                                                   :
     v.                                            : Civil Action No: _____
                                                   :
E. L. Tatum, Jr., Warden, et al,:
Twenty-Eight Known                                 :
And Unknown Defendants                             :
                                                   :

TO THE ABOVE-NAMED DEFENDANTS:


You are hereby summoned and required to serve upon Plaintiff, whose address is P.O. Box 420, Fairton, New Jersey, an answer to the Complaint which is herewith served upon you, within 20 days after service of this summons upon you, or 60 days if the U.S. Government or officer/agent thereof is a defendant. If you fail to do so, judgement by default will be taken against you for the relief demanded in the Complaint.


_____
Clerk of the Court


Dated this _____ day of _____ , 2020.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

~~Northern~~ Southern District of New York

Sazed  Kaid
_____
Plaintiff

v.

E. L Tatum, Jr.
_____
Defendant

)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A PRO SE CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 60 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Lawrence K. Baerman
_____
_Clerk of Court_

Date: 4.28.2020
_____

_____
_Signature of Deputy Clerk_

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

    on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the summons on *(name of individual)* _____ , who is

    designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ☐ I returned the summons unexecuted because _____ ; or

    ☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                              *Server's signature*

                                      _____
                                               *Printed name and title*

                                      _____
                                                *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern ~~Northern~~ District of New York

| | |
|---|---|
| Saeed Kaid | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| K. Alraheeb | ) |
| *Defendant* | ) |

## SUMMONS IN A PRO SE CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 60 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Lawrence K. Baerman
*Clerk of Court*

Date: 4.28.2020

*Signature of Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Saeed Kaid
78600-054
FCI-FAIRTON
P.O.BOX 420
Fairton, N.J.-08320

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
**CERTIFIED MAIL®**

7019 1120 0000 5452 7666





CLERK'S OFFICE
Pro SE Intake Unit
United States District Court
Southern District of New York
500    Pearl Street
New York, N.Y. 10007

  

U.S. POSTAGE PAID
FCM LG ENV
FAIRTON, NJ
08320
MAY 01, 20
AMOUNT
**$0.00**
R2305E125550-06
1000        10007

USM P3
SDNY


RECEIVED
MAY 11 2020
PRO SE OFFICE

LEGAL MAIL